IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SULPHURIC ACID TRADING COMPANY, INC.,
a Florida corporation,

    Plaintiff,

v.

MATRIX SERVICE, INC.,
an Oklahoma corporation,

    Defendant.
_____/

Case No:

Division:

## COMPLAINT

COMES NOW, the Plaintiff, Sulphuric Acid Trading Company, a Florida corporation ("SATCO"), by and through its undersigned attorneys, and sues the Defendant, Matrix Service, Inc., an Oklahoma corporation ("Matrix"), and as grounds therefore would show that:

### Jurisdiction and Parties

1. This is an action for damages which exceed Fifteen Thousand Dollars ($15,000), exclusive of costs and attorneys' fees.

2. SATCO is a corporation organized and existing under the laws of the State of Florida with its principal office located at 3710 Corporex Park Drive, Suite 205, Tampa, Florida 33619.

3. Matrix is a corporation organized and existing under the laws of the State of Oklahoma which, at all relevant times, was registered as a foreign corporation authorized to transact business in Florida.

4. As more particularly described in this Complaint, Matrix breached a contract in Florida by failing to perform acts required by the contract to be performed in Florida.

5. As more particularly described in this Complaint, Matrix committed a tortious act within Florida.

6. At all relevant times, Matrix was engaged in substantial and not isolated activity within Florida.

7. At all relevant times, Matrix operated, conducted, engaged in, or carried on a business or business venture in Florida.

### General Allegations

8. At all relevant times, SATCO operated a facility at the Port of Tampa and is in the business of purchasing, selling and storing sulphuric acid and engaging common carriers to transport sulphuric acid.

9. SATCO's facility at the Port of Tampa, Florida, includes industrial storage tanks used to store sulphuric acid.

10. On or about November of 2001, a leak occurred in one of SATCO's storage tanks at the Port of Tampa known as "Tank 3."

2

11. SATCO took immediate measures to contain the leak, drain the tank, clean the affected areas, and take Tank 3 out of service.

12. SATCO engaged Defendant Matrix, a company with expertise in the construction and repair of industrial tanks, to determine the cause, location and extent of the leak in Tank 3. A true and correct copy of the Purchase Order sent to Matrix for investigation of such leak is attached hereto as Exhibit "A."

13. On or about December of 2001, Matrix began the investigation of the leak in Tank 3, and based upon the investigation, it was determined that Tank 3 should be reconstructed, including, but not limited to, removal and replacement of the Tank 3 floor and other repairs. SATCO engaged Matrix for such work as described on the revised Purchase Order, a true and correct copy of which is attached hereto as Exhibit "B."

14. In light of the investigation and reconstruction of Tank 3, it was determined that the floors in "Tank 1" and "Tank 2" would be replaced.

15. Subsequent to the inspections of Tanks 1 and 2, and on or about March of 2002, Matrix sent a proposal to SATCO to reconstruct Tanks 1 and 2, including, but not limited to, complete removal and replacement of the steel tank flooring. A true and correct copy of the proposal is attached hereto as Exhibit "C."

16. On or about March of 2002, SATCO accepted Matrix's proposal and issued a purchase order to Matrix for the reconstruction of Tank 1 and Tank 2. A true and correct copy of the purchase order is attached hereto as Exhibit "D."

17. Beginning in 2002, Matrix reconstructed Tank 3, followed by reconstruction of Tank 2 and Tank 1, including, but not limited to, removal and replacement of the steel flooring for each Tank.

18. On or about November of 2008, Tank 2 leaked sulphuric acid.

19. SATCO immediately drained, cleaned and remediated the environmental damage caused by the leak and repaired a pinhole in a welded seam of the steel floor of Tank 2.

20. In January of 2009, upon attempting to place Tank 2 back into service, a leak of sulphuric acid occurred. SATCO ceased its efforts to put Tank 2 back into service, and was required to store sulphuric acid off-site.

21. SATCO provided written notice to Matrix of the leak in Tank 2, advised Matrix that Tank 2 would undergo an inspection and analysis, and invited Matrix to participate in the inspection of the Tank.

22. Unbeknownst to SATCO, the Tank flooring constructed by Matrix was not properly constructed in that the steel backing bars were not attached, the flooring contained numerous defec-

tive welds, and other latent and concealed defects of material and workmanship existed.

23. An extensive inspection, including testing and analysis, was performed on Tank 2, the results of which revealed the existence of numerous latent and hidden defects in the work performed by Matrix.

24. The defects and improper construction of Tank 2 were so numerous and extensive that the entire bottom of Tank 2 required removal and replacement.

25. As a result of the defects, the bottom of Tank 2 was removed and replaced in 2009, at significant cost and expense.

26. In December of 2010, Tank 1 was taken out of service, drained and inspected, at which time the inspection and analysis revealed the existence of numerous latent defects in the welds of Tank 1.

27. As a result of the discovery of latent and defective workmanship by Matrix, the steel tank flooring of Tank 1 was removed and replaced in 2011.

28. In December of 2011, Tank 3 was taken out of service and an extensive inspection and analysis of Tank 3 was conducted, which also revealed numerous latent defects in the welds in the steel flooring of Tank 3.

29. SATCO is in the process of removing and replacing the steel flooring of Tank 3.

30. SATCO incurred significant cost and expense to remove and replace the flooring of the Tanks and to otherwise cure the defective work of Matrix.

31. As a consequence of the leaks, inspections, repairs and defective and latent workmanship of Matrix, the Tanks were out of service for an extended period, which resulted in significant and foreseeable costs, damages and lost profits to SATCO.

32. All conditions precedent to the filing of this action, if any, have occurred, been satisfied or waived.

33. SATCO retained the undersigned counsel and is obligated to pay them a reasonable attorneys' fee.

## COUNT I – BREACH OF CONTRACT

34. SATCO realleges paragraphs one (1) through thirty-three (33) as if fully set forth.

35. In 2002, SATCO contracted with Matrix to repair and reconstruct the Tanks, including, but not limited to, removal and replacement of the Tank floors. The proposal for the removal, replacement, repairs and reconstruction is attached hereto as Exhibit "C" and the purchase orders are attached as Exhibit "B" and Exhibit "D" (collectively the "Agreement").

36. SATCO performed its duties required by the terms of the Agreement.

37. Matrix materially breached the Agreement by failing to reconstruct the Tanks in a workmanlike manner and in accord with the terms of the Agreement.

38. SATCO suffered damages as a result of the material breach of the Agreement by Matrix, specifically including, but not limited to, costs of curing defects, removal, repair and replacement of the tank bottoms, environmental remediation, draining, cleaning, testing and inspecting the Tanks, the costs of transporting and storing acid off-site, loss of use, lost profits and legal costs.

**WHEREFORE**, the Plaintiff, SATCO, prays for entry of a judgment against Defendant Matrix for damages, including incidental and consequential damages, lost profits, costs, interest, attorneys' fees, and all other relief that this Honorable Court deems just and proper.

## COUNT II - IMPLIED DUTY OF WORKMANSHIP

39. SATCO realleges paragraphs one (1) through thirty-three (33) as if fully set forth.

40. Matrix agreed to reconstruct the Tanks and replace the Tank bottoms in exchange for payment from SATCO.

41. Matrix was a contractor for repairs.

42. Matrix had an implied duty to perform its work in a workmanlike manner.

43. Matrix's reconstruction of the Tanks and replacement of the Tank bottoms was performed in such a manner that there existed numerous latent and concealed defects in the Tanks.

44. As a result of the hidden, concealed or latent defects in the Tanks, leaks of sulphuric acid occurred and SATCO could not use the property for the use for which it was intended, specifically, to store sulphuric acid, and SATCO incurred significant costs and expenses to cure, repair, remove and reconstruct the work originally performed by Matrix.

45. Matrix breached its implied warranty of workmanlike performance to reconstruct the Tanks and replace the Tank bottoms.

46. SATCO has been damaged by the breach of the implied duty of workmanlike performance by Matrix, specifically including, but not limited to, costs of curing defects, removal, repair and replacement of the tank bottoms, environmental remediation, draining, cleaning, testing and inspecting the Tanks, the costs of transporting and storing acid off-site, loss of use, lost profits and legal costs.

**WHEREFORE**, the Plaintiff, SATCO, prays for entry of a judgment against Defendant Matrix for damages, including incidental and consequential damages, lost profits, costs, interest, and attorneys' fees, and all other relief that this Honorable Court deems just and proper.

## COUNT III - BREACH OF EXPRESS WARRANTY

47. SATCO realleges paragraphs one (1) through thirty-three (33) as if fully set forth.

48. Matrix agreed to provide services to SATCO, specifically, to reconstruct SATCO's sulphuric acid storage tanks and replace the Tank bottoms located at its Port of Tampa facility.

49. Matrix provided an express warranty of its services on the Tanks which were to conform to industry standards.

50. The services provided by Matrix failed to conform to industry standards. Particularly, the reconstruction and replacement of the bottoms of the Tanks was performed in such a manner that numerous latent or concealed defects existed in the reconstruction of the Tanks.

51. SATCO suffered damages caused by Matrix's breach of the express warranty, specifically including, but not limited to, costs of curing defects, removal, repair and replacement of the tank bottoms, environmental remediation, draining, cleaning, testing and inspecting the Tanks, the costs of transporting and storing acid off-site, loss of use, lost profits, and legal costs.

**WHEREFORE**, the Plaintiff, SATCO, prays for entry of a judgment against Defendant Matrix for damages, including incidental and consequential damages, lost profits, costs, interest, attor-

9

neys' fees, and all other relief that this Honorable Court deems just and proper.

### COUNT IV - PROMISSORY ESTOPPEL

52. SATCO realleges paragraphs one (1) through thirty-three (33) as if fully set forth.

53. Matrix made a misrepresentation of a material fact, particularly, that Matrix properly welded and attached the bottom plates and the backplates of the Tanks.

54. Matrix should have reasonably expected to induce action or forbearance on the part of SATCO, such as SATCO placing the Tanks back into service storing sulphuric acid.

55. Matrix's misrepresentations induced SATCO to place the Tanks back into service.

56. SATCO suffered a detriment caused by its reliance on Matrix's misrepresentations.

57. SATCO suffered damage caused by Matrix's misrepresentation, specifically including, but not limited to, costs of curing defects, removal, repair and replacement of the tank bottoms, environmental remediation, draining, cleaning, testing and inspecting the Tanks, the costs of transporting and storing acid off-site, loss of use, lost profits and legal costs.

**WHEREFORE,** the Plaintiff, SATCO, prays for entry of a judgment against Defendant Matrix for damages, including incidental and consequential damages, lost profits, costs, interest, attor-

neys' fees and all other relief that this Honorable Court deems just and proper.

## COUNT V - UNJUST ENRICHMENT

58. SATCO realleges paragraphs one (1) through thirty-three (33) as if fully set forth.

59. SATCO conferred a benefit upon Matrix by making payment to Matrix for repairing and reconstructing the Tanks and replacing the Tanks' bottoms in excess of One Million Four Hundred Thousand Dollars ($1,400,000.00).

60. Matrix has knowledge of the benefit of the payment provided to it by SATCO.

61. Matrix voluntarily accepted and retained the benefit of the payment conferred upon it from SATCO.

62. Matrix did not properly perform the services sought by SATCO in exchange for the payment.

63. SATCO was required to make payments to other parties to remedy and complete the services SATCO sought from Matrix in exchange for its payment to Matrix.

64. Matrix's acceptance and retention of the benefit of the payment made by SATCO is inequitable unless Matrix pays to SATCO the difference of the value of the benefit of the services provided and the amount of the payment.

65. Matrix has been unjustly enriched in the amount of the difference of the value of the benefit of the services provided and the amount of the payment by SATCO to Matrix.

**WHEREFORE**, the Plaintiff, SATCO, prays for entry of a judgment against Defendant Matrix for damages, costs, interest, attorneys' fees and all other relief that this Honorable Court deems just and proper.

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff requests Trial by jury of all issues so triable.

Dated: April 3rd, 2012.

John P. Holsonback, Esquire
HolsonbackLaw, P.A.
400 North Ashley Drive
Suite 1500
Tampa, Florida 33602
(813) 229-9119
Florida Bar No. 385654
and
Jeffery M. Fuller, Esquire
Jeff Fuller & Associates, P.A.
201 N. Franklin Street
Suite 1770
Tampa, Florida 33602
(813)443-0978
Florida Bar No. 475599
Attorneys for Plaintiff

jph/SATCO-Matrix/Complaint.001